**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Case No. 16-cr-00267-LKG |
| DANTE D. BAILEY, *et al.*, | ) ) | Dated: June 6, 2025 |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

The Defendant, Devon Dent, has moved to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821. ECF No. 1909. This motion is fully briefed. ECF Nos. 1909 and 1922. No hearing is necessary to resolve this motion. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court **DENIES** Mr. Dent's motion.

**II.   FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.    Factual Background**

Mr. Dent is a federal prisoner, currently incarcerated at United States Prison ("USP") Victorville, which is located in Adelanto, California. ECF No. 1909 at 2. Mr. Dent is serving a 168-month sentence after having been convicted of racketeering conspiracy and conspiracy to distribute controlled substances. ECF No. 1688 at 2.

Mr. Dent's Sentence

On February 27, 2019, Mr. Dent pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and to one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF No. 1018 (Plea Agreement). Pursuant to the Plea Agreement, Mr. Dent admitted to the following facts:

> Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Superseding Indictment. MMP was modeled

---

[1] The facts recited in this Memorandum Opinion and Order are taken from Defendant's motion to reduce sentence; the Government's response in opposition thereto; the parties' Plea Agreement; and the presentence report. ECF Nos. 1909, 1922, 1219 and 1018.

after the Italian Mafia, and was organized hierarchically with a "Don" at the top and various "Bosses," "Underbosses," "Capos," "Lieutenants," and "Mobsters" underneath. For many years, MMP controlled the drug trade in large swaths of Northwest Baltimore City. The gang's drug shop in the 5200 block of Windsor Mill Road was particularly lucrative due to its close proximity to Interstate 70, and it frequently attracted drug customers driving from western Maryland and neighboring states. MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities, and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts, and eliminate rivals. For these and other reasons, MMP constituted an enterprise engaged in, and whose activities affected, interstate or foreign commerce.

The Defendant, Devon DENT, a/k/a "Tech," was a member of Murdaland Mafia Piru ("MMP") during the dates of the racketeering conspiracy. The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution. The Defendant agrees that the "Overt Acts" in which he is named in the Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

In particular, on October 15, 2012, the Defendant was present when Co-Defendant 1 attempted to murder S.H., shooting him multiple times in the head and torso with a .45 caliber firearm outside Club Mirage in downtown Baltimore. A closed-circuit television ("CCTV") camera captured the incident, and showed the Defendant arriving at Club Mirage with Co-Defendant 1 as well as Co-Defendant 2, Co-Defendant 3, and Co-Defendant 4. Co-Defendant 3 was wearing a red shirt with the words "MOBB SQUAD" on the back, and he filmed the victim with a tablet device shortly before the shooting.

On November 4, 2012, the Defendant possessed with intent to distribute roughly 12 grams of heroin and 21 grams of cocaine base. The Defendant also possessed MMP paperwork laying out the history and structure of the gang, as well as certain rules of conduct, including that "retaliation is a must," and that "co-operation with authorities that lead[s] to incriminating others" is punishable by death.

On April 15, 2015, in the 3500 block of Gwynn Oak Avenue, the Defendant distributed cocaine base to an undercover officer who was wearing an audio-video recording device.

On April 22, 2015, in the 4700 block of Gwynn Oak Avenue, the Defendant distributed cocaine base to an undercover officer who was wearing an audio-video recording device.

On February 1, 2016, Co-Defendant 5 sent a letter to Co-Defendant 2 at the Baltimore County Detention Center enclosing photographs picturing the Defendant with Co-Defendant 2, Co-Defendant 4, Co-Defendant 3, Co-Defendant 6, Co-Defendant 7, and other MMP members wearing red items of clothing and making MMP gang signs.

Between April 3, 2016 and April 23, 2016, the Defendant made a series of calls to Co-Defendant 8 from a recorded jail telephone at the Baltimore City Detention Center in which they discussed MMP business. On April 3, 2016, the Defendant advised Co-Defendant 8 to be careful because the undercover officer involved in his case "still be coming up there video-ing sh**" and "nig**s still be giving it to him." The Defendant also gave Co-Defendant 8 a detailed description of the undercover officer so that Co-Defendant 8 could avoid making drug sales to him. In a subsequent call, the Defendant reminisced about an MMP party he attended with Co-Defendant 2, Co-Defendant 5, Co-Defendant 9, and others. The Defendant recalled that they brought "an ounce of molly" (a reference to 3, 4-Methylenedioxymethamphetamine) and "a quarter pound of loud" (a reference to marijuana), and that he spent over $5,000 on the trip. Co-Defendant 8 and the Defendant also discussed an associate who was in a car accident. The Defendant said he "was going to put [his drug] charge on him if he was dead" because "dead nig**s can't really talk."

On April 13, 2016, the Defendant told Co-Defendant 8 to call "Lil Man" and tell him he owes the Defendant "a PayPal" and "if he ain't got it, yo, tell his bit** ass don't come around the way no more or y'all gonna beat him up."

On April 23, 2016, the Defendant reminisced about when he, Co-Defendant 1, Co-Defendant 2, and now-deceased MMP member James Edwards "used to just pull up on the block" like they were "untouchable." The Defendant continued: "We used to ride around like the police couldn't touch us, I'm talking broad daylight, I'm talking about main streets too," like "Monroe," "Pratt," "Monument Street," and "Pennsylvania Avenue." Co-Defendant 8 asked: "Like you just walk around with a joint out or something?" The Defendant replied, "No, like, handling situations, like, hopping out and putting nig**s in they place, … like, 'Everybody lay the fu** down.'"

On September 27, 2016, law enforcement officers executed a federal search warrant

3

>at the residence of Co-Defendant 8. Among other things, they recovered letters written by the Defendant to Co-Defendant 8 requesting that Co-Defendant 8 smuggle narcotics into the jail for the Defendant by sending it through the mail and disguising the envelope to look like legal mail.
>
>The Defendant agrees that he conspired with other members of MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy.

ECF No. 1018 at 11–12.

The presentence report ("PSR") for this matter provides that Mr. Dent's criminal history results in a subtotal criminal history core of nine, and that Mr. Dent received two "status points" under U.S.S.G. § 4A1.1(d), because he was on parole in a Baltimore City criminal case at the time the instant offenses were committed. ECF No. 1219. *Id*. at ¶¶ 47–49. And so, Mr. Dent's total criminal history score is 11. *Id*. The PSR also provides that Mr. Dent's criminal history category is Category V. *Id.*

The PSR further provides that Mr. Dent is a career offender, pursuant to U.S.S.G. § 4B1.1(b), because he had two or more prior felony convictions for controlled substance offenses. *Id.* at ¶ 49. And so, Mr. Dent's criminal history is elevated to Category VI, pursuant to U.S.S.G. § 4B1.1(b). *Id.* at ¶¶ 32, 49, 110; *see also* ECF No. 1227 (Statement of Reasons), at 1.

Pursuant to the Plea Agreement, the parties agreed that the offense level for the racketeering conspiracy offense is 30, pursuant to U.S.S.G. § 2E1.1(a) and § 2D1.1(c)(5). ECF No. 1018 at 5. The Government also recommended a 2-level increase in this offense level, pursuant to U.S.S.G. § 2D1.1(b)(4), because one of the objects of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility. *Id.* Dent opposed this increase. *Id.* Because Dent was a career offender, the offense level was also elevated to 37. ECF No. 1219, at ¶ 32; ECF No. 1227 at 1. In addition, there was a two-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), bringing the total offense level to 35. ECF No. 1219, at ¶¶ 33–34; ECF No. 1227, at 1.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that the appropriate sentence for the subject offenses was 120 to 180 months imprisonment for each

4

count, to run concurrently with each other, and with Mr. Dent's state sentence in Baltimore City Circuit Court Docket No. 115169003. ECF No. 1018 at ¶ 9; ECF No. 1219, at ¶ 108.

The Court held a sentencing hearing on June 12, 2019. ECF No. 1226. During the sentencing hearing, the Court adopted the PSR's offense level calculation of 35 and criminal history calculation of VI, resulting in a Sentencing Guidelines range of 292 to 365 months imprisonments. ECF No. 1227 at 1 (Statement of Reasons). The Court also accepted the parties stipulation regarding the sentencing range. *Id*. And so, the Court sentenced Mr. Dent to 168 months imprisonment. *Id*.; *see also* ECF No. 1687 (Order Granting Amended Judgment).

### B.  Procedural Background

On November 13, 2024, Mr. Dent filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821. ECF No. 1909. On January 28, 2025, the Office of the Federal Public Defender filed a notice declining to supplement the motion. ECF No. 1916.

On March 3, 2025, the Government filed its response in opposition to Mr. Dent's motion. ECF No. 1922.

Mr. Dent's motion having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS
### A.  Motions To Reduce Sentence

Generally, once imposed by the Court, a federal sentence must remain "final" and undisturbed. 18 U.S.C. § 3582(b). But, Congress has created a narrow exception to this general rule for circumstances where the U.S. Sentencing Commission retroactively amends the applicable guidelines. *Id.* In this regard, the Court may reduce a sentence after it has been imposed, where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). And so, the Court may reduce such a sentence, "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The United States Court of Appeals for the Fourth Circuit has held that the Court must employ a two-step approach in considering Section 3582(c)(2) motions. First, the Court must determine the defendant's eligibility. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016)

5

(internal quotations and citations omitted). "Section 3582(c)(2) permits a reduction only if (1) the defendant's term of imprisonment was based on a sentencing range that has subsequently been lowered by the Sentencing Commission, and (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Second, the Court may grant the authorized reduction after considering the factors set forth in Section 3553(a), to the extent that they are applicable. *Id.* And so, "[t]he ultimate decision of '[w]hether to reduce a sentence and to what extent is committed to the district court's discretion." *Id.* (citations omitted).[2]

### B. Amendment 821

Amendment 821 to the United States Sentencing Guidelines changed the application of the Sentencing Guidelines with respect to certain offenders who either: (a) earned criminal history "status points" based on commission of an offense while serving a criminal justice sentence, or (b) presented zero criminal history points at the time of sentencing. *See* U.S.S.G. amend. 821. Specifically, Part A of this amendment amends Section 4A1.1 of the Sentencing Guidelines to strike the two status points previously assessed under Section 4A1.1(d) for defendants who committed their offense while under any criminal-justice sentence, including probation, parole, supervised release, imprisonment, work release or escape status. *Id.* at Part A. In addition, Part A adds a new subsection (e), that adds one criminal-history point instead of two points for any defendant who receives seven or more points and who committed his offense while under any criminal-justice sentence as described above. *Id.*

## IV.    ANALYSIS

Mr. Dent has filed a motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821, upon the grounds that he is eligible for a reduction in his criminal history score under Part A of Amendment 821. ECF No. 1909. And so, Mr. Dent requests that the Court reduce his sentence. *Id.*

---

[2] A reduction in sentence must also be consistent with the applicable policy statements issued by the Sentencing Commission. Relevant to the pending motion, one such policy statement provides that: "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—(A) none of the amendments listed in subsection (d) is applicable to the defendant; or (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range. U.S.S.G. § 1B1.10(a)(2); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) ("In providing that sentencing reductions must be consistent with applicable policy statements, § 3582(c)(2) thus creates a jurisdictional bar to reducing sentences below the range authorized by the Commission.").

The Government opposes Mr. Dent's motion and argues that Mr. Dent is not eligible for a reduction of his sentence under Amendment 821 and the Section 3353(a) facts also do not support a reduction of his sentence. ECF No. 1922. And so, the Government requests that the Court deny Mr. Dent's motion. *Id*.

For the reasons that follow, the Mr. Dent has not shown that he is eligible for a sentence reduction under Amendment 821. And so, the Court DENIES Mr. Dent's motion to reduce sentence.

### A.     Mr. Dent Has Not Shown That He Is Eligible For A Sentence Reduction

As an initial matter, Mr. Dent has not shown that he is eligible for a sentence reduction under Part A of Amendment 821. Pursuant to Part A of Amendment 821, a defendant with seven or more criminal history points will now receive one status point increase, rather than an increase of two status points. *See* U.S.S.G. amend. 821 at Part A. This amendment may be retroactively applied. *Id*.

The evidence before the Court shows that, when Amendment 821 is applied to this case, Mr. Dent's sentencing range is not lowered by Amendment 821. In this regard, the PSR makes clear that Mr. Dent received nine natural criminal history points and that he would have received two "status points" under the old U.S.S.G. § 4A1.1(d), resulting in a criminal history category of Category V. ECF No. 1219 at ¶¶ 47-49. The PSR also makes clear that Mr. Dent's criminal history category was increased to Category VI, because he is a career offender under U.S.S.G. § 4B1.1(b). *Id*. at ¶ 49.

Given this, the evidence before the Court shows Mr. Dent's criminal history category would not change when Amendment 821 is applied to this case. *See* ECF No. 1219 at ¶¶ 32, 49, 110. And so, the number of "status points" assigned to Mr. Dent did not affect his criminal history category, or sentence.

Because the application of Part A of Amendment 821 to Mr. Dent's sentence would not result in lowering the applicable Sentencing Guidelines range for this case, he is not eligible for a reduction of sentence. U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Williams*, Crim. No. 2:20-cr-01-01, 2024 WL 947841 (S.D.W.V. Mar. 5, 2024) (defendant ineligible for a sentence reduction under

7

Amendment 821 where guidelines range was "the result of his classification as a career offender"). And so, the Court must DENY Mr. Dent's motion to reduce sentence.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Dent's motion to reduce sentence.

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge